

Attorneys at Law

**Jeremy A. Lieberman**
jalieberman@pomlaw.com

600 Third Avenue
New York, New York 10016
T: 212.661.1100   F: 212.661.8665

October 6, 2020

**VIA ECF &HAND DELIVERY**

Honorable Naomi Reice Buchwald
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street – Courtroom 21A
New York, NY 10007-1312

**Re:**   *In re LIBOR-Based Financial Instruments Antitrust Litig.*, No.11-MD-2262 (NRB);
*The Berkshire Bank v. Bank of America, et al.*, No. 12-cv-5723-NRB

Dear Judge Buchwald:

In accordance with Section 2.B. of Your Honor's Individual Practices, we write as interim class counsel for the Lender Action to request a pre-motion conference regarding Lender Plaintiffs' motion pursuant to Federal Rule of Civil Procedure 23(e) for preliminary approval of a settlement (the "Settlement"), including conditional certification of a settlement class (the "Lender Class"), and appointment of Pomerantz LLP as Lender Class counsel. The Settlement is with Defendant Deutsche Bank AG ("Deutsche Bank" or "Settling Defendant").

**Settlement Approval is Warranted**

If approved, the Settlement will create a fund totaling $425,000 for the benefit of Lender Class Members. *See* Declaration of Jeremy A. Lieberman ("Lieberman Decl.") ¶ 44, attached hereto. The Settlement resulted from arm's length negotiations; offers an excellent result for the Lender Class; is fair, reasonable, and adequate under the governing standards; and warrants approval.

In determining whether to grant preliminary approval to a settlement, the Court should consider both the "negotiating process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's substantive terms, *i.e.*, substantive fairness." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803–04 (2d Cir. 2009). As this Court has recognized, "[p]reliminary approval is not tantamount to a finding that [a proposed] settlement is fair and reasonable. . . . Instead, at this stage, we need only decide whether the terms of the Proposed Settlement are at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard." ECF No. 681 at 5 (internal quotation marks and citation omitted).

Because the Settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," it enjoys a "presumption of fairness." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74

(S.D.N.Y. 2000). *See* Lieberman Decl. ¶¶ 39-45. "'[G]reat weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re PaineWebber Ltd. P'ships. Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997).

The "*Grinnell* factors" for final approval of a class settlement[1] relevant to preliminary approval further support approval. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), abrogated on other grounds by *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). First, it is well recognized that claims involving collusion and price manipulation among industry participants are "complicated, lengthy, and bitterly fought, as well as costly," *In re Vitamin C Antitrust Litig.*, No. 06 MDL. 1738, 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012) (discussing federal antitrust cases) (citations and internal quotes omitted), and this case, commenced in mid-2012, is no exception. The complexity and the hard-fought battles in this Action involving fraud and civil conspiracy to manipulate LIBOR is reflected in the numerous fully-briefed motions and opinions in the case since the original complaint was filed on July 25, 2012. *See* Lieberman Decl. ¶¶ 7-38. In the absence of the Settlement, the litigation of this complex case against Settling Defendant could consume many more years of the Court's resources. *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) ("[t]he potential for this litigation to result in great expense and to continue for a long time suggest that settlement is in the best interests of the Class") (citation omitted).

The third *Grinnell* factor likewise supports preliminary approval here. Since initiating this litigation in July 2012, Lender Plaintiffs' Counsel has gained a substantial understanding of the case. Plaintiffs have actively litigated their claims for approximately eight years. Lieberman Decl. ¶ 42. Plaintiffs have responded to motions to dismiss and other motions. *E.g., id.* at ¶¶ 7-38. In addition, Lender Plaintiffs' Counsel has reviewed millions of pages of documents in connection with class certification discovery, worked extensively with industry experts, and worked with economists to analyze transactional data. *Id*. ¶ 46. The information gained through the hard-fought litigation has provided Lender Plaintiffs' Counsel with a comprehensive understanding of the relative strengths and weaknesses of Lender Plaintiffs' claims and to negotiate a settlement which provide excellent relief for the Lender Class. Thus, the stage of the proceedings supports preliminary approval of the proposed Settlement.

The fourth, fifth and sixth *Grinnell* factors – which address the risks of establishing liability, damages and maintaining the class through trial – all support preliminary approval here. The risks of establishing liability and damages are significant and are amplified by the complexity of the LIBOR market. Furthermore, Defendants are wealthy global financial institutions that are represented by some of the best law firms in the United States and can afford to litigate this case indefinitely. Even if liability were established, Plaintiffs would face the

---

[1] (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. It is premature to consider factor two, the Lender Class's reaction to the Settlement, since no notice has yet been disseminated. *Grinnell*, 495 F.2d at 463.

difficulties and complexities inherent in proving damages to the jury, which would be hotly contested and would inevitably involve a "battle of the experts." Thus, there is a substantial risk that a jury might accept one or more of Defendants' damage arguments, or award far less than the total settlement amount, or nothing at all. Notably, the Court dismissed the Settling Defendant on personal jurisdiction grounds (which Plaintiffs are now appealing). Moreover, on February 28, 2018, the Court denied Plaintiffs' motion for class certification (ECF No. 715), and the Second Circuit denied Plaintiffs' petition for interlocutory appeal pursuant to Fed. R. Civ. P. 23(f). Thus, the inherent "uncertainty of maintaining a class through trial" weighs in favor of settlement. *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 665 (S.D.N.Y. 2015).

Regarding the seventh *Grinnell* factor, while Settling Defendant clearly is a major bank that could withstand a greater judgment than their respective Settlement amounts, "the defendant's ability to pay is much less important than the other factors, especially where the other *Grinnell* factors weigh heavily in favor of settlement approval." *In re Sinus Buster Prods. Consumer Litig.*, 2014 WL 5819921, at *11 (E.D.N.Y. Nov. 10, 2014).

The last two *Grinnell* factors "recognize the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 119 (2d Cir. 2005). In applying these factors, "[d]ollar amounts are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984). To recover, Lender Plaintiffs must first prevail on an appeal of the Court's personal jurisdiction ruling, obtain class certification, establish liability, prove damages, and succeed in upholding a favorable judgment on subsequent appeal. The eighth and ninth factors thus support preliminary approval.

Thus, under all applicable standards, the Court should grant preliminary approval of the Settlement.[2]

**Certification of the Lender Class is Appropriate**

Plaintiffs request certification of the following "Lender Class" for settlement purposes:

All lending institutions headquartered in the United States, including its fifty (50) states and United States territories, that originated loans, held loans, held interests in loans, owned loans, owned interests in loans, purchased loans, purchased interests in loans, sold loans, or sold interests in loans with interest rates based upon U.S. Dollar LIBOR ("U.S. Dollar LIBOR-Based Loans"), which rates

---

[2] Following the submission of competitive bids from different alternative potential providers, Lender Plaintiffs' Counsel retained JND Legal Administration as the Claims Administrator and Huntington Bank to serve as Escrow Agent. JND has a successful track record of performing class-action settlement services in a highly professional, efficient, and cost-effective fashion. Lieberman Decl. ¶¶ 49-50. This Court approved these appointments as to the prior settlements. Lender Plaintiffs seek the Court's approval of these appointments for this Settlement as well.

adjusted at any time between August 1, 2007 and May 31, 2010 (the "Class Period").

Certification of the Lender Class is appropriate because it meets all of the requirements of Fed. R. Civ. P. 23(a), as well as one of the requirements of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). When considering certification of a settlement class, "courts must take a liberal rather than a restrictive approach." *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157-58 (E.D.N.Y. 2009).

As the Court previously found, Rule 23(a)(1-3) requirements of numerosity, commonality and typicality are all satisfied here. ECF No. 715 at 256-60. The Court adhered to these conclusions when approving the previous settlements in the Lender Action. ECF No. 2635, at 3. Lender Plaintiffs will fairly and adequately protect the interests of the class, since they do not have interests that are antagonistic to those of the Class, and they have selected counsel who are qualified, experienced, and generally able to conduct the litigation. *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). While the Court found in denying class certification that Berkshire was not an adequate class representative because of a potential conflict of interest that could create an appearance of impropriety (*see* ECF No. 715 at 269), the other proposed settlement class representative, GDB, has no potential conflict of interest. The board of directors of GDB (as well as the board of directors of Berkshire) approved the settlement. As this Court held in approving the previous settlements, the adequacy of representation requirement was met because "any concerns regarding Berkshire Bank's inadequacy are addressed by the participation of an additional named plaintiff, the Government Development Bank for Puerto Rico (GDB), in the settlement process." ECF No. 2635, at 3.

The Lender Class also satisfies the requirements of Rule 23(b)(3) that (i) common issues predominate over individual issues, and (ii) a class action is the superior method of adjudicating this controversy. In this settlement context, a finding of predominance is easier, as long as other requirements of Rule 23 are met because settlement eliminates manageability problems related to trial. *See Am. Int'l Grp. Secs. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012). The judicial economy at issue for a settlement class is obtained through the effectuation of the settlement itself, rather than through a trial of the class' claims. *See Amchem*, 521 U.S. at 620. The superiority prong requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The superiority requirement is applied in a more lenient fashion in the settlement context because the Court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem*, 521 U.S. at 620; *Am. Int'l Group*, 689 F.3d at 239, 240.

While the Court previously found, in denying class certification, that individual issues related to reliance, statutes of limitations, damages and variations in state law would predominate the common issues, and a class action was not superior because of "manageability problems" it held in certifying the prior settlement classes that "manageability concerns do not stand in the way of certifying a settlement class," the "individual issues of reliance and variations in state law weigh less heavily against predominance … and can be manageably addressed through the plan of distribution." ECF No. 2635, at 4-5.

### Lender Plaintiffs' Counsel Should be Appointed Class Counsel

Lender Plaintiffs' Counsel readily meet the standards of Rule 23(g). For approximately eight years, they have actively litigated the claims in this action and have committed substantial resources necessary to effectively and efficiently litigate the case. Lieberman Decl. ¶¶ 7-38. Moreover, they have significant experience litigating class actions and were appointed by this Court as interim class counsel in the Lender Action (ECF No. 692) and as counsel for the settlement class in the prior settlements. ECF No. 2687, at 1. Accordingly, the Court should now appoint the undersigned to be counsel for the Lender Class.

### The Proposed Notice Plan Should Be Approved

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Long v. HSBC USA Inc.*, 2015 WL 5444651, at *10 (S.D.N.Y. Sept. 11, 2015). However, neither individual nor actual notice to each class member is required; rather, "class counsel [need only] act[] reasonably in selecting means likely to inform the persons affected." *Jermyn v. Best Buy Stores, L.P.*, 2010 WL 5187746, at *3 (S.D.N.Y. Dec. 6, 2010) (citing *Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir. 1988)); *In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*, 271 F. App'x 41, 44 (2d Cir. 2008) ("It is clear that for due process to be satisfied, not every class member need receive actual notice[.]"). "If the names and addresses of class members cannot be determined by reasonable efforts, notice by publication is sufficient to satisfy the requirements of the due process clause and Rule 23." *Jermyn*, 2010 WL 5187746, at *3.

Here, Plaintiffs, in consultation with Claims Administrator JND Legal Administration ("JND"), propose a Notice Program designed to provide reasonable and practicable notice to Lender Class Members. *See* Declaration of Jennifer M. Keough ("Keough Decl."), ¶¶ 4-14. First, the proposed individual Notice will be mailed (or emailed) to all entities that previously submitted valid proof of claim forms in connection with previous settlements or requested exclusion from previous settlements. *Id.* ¶ 5. Second, the proposed Summary Notice will be published once in *IBD Weekly* and *The Wall Street Journal*. *Id.* Third, there will be a press release issued on PR Newswire. *Id.* Fourth, the Summary Notice and press release will refer potential Lender Class Members to the Lenders Website at www.LendersLIBORSettlements.com as well as a toll-free number to a dedicated call center. *See* Keough Decl., ¶¶ 6-9.

The notice program constitutes the "best notice that is practicable under the circumstances." In connection with previous settlements with six other defendants (totaling $35 million) Plaintiffs twice conducted a thorough notice program that provided widespread individual notice to potential Settlement Class Members. In each instance, copies of the Court approved individual notice and proof of claim form was sent to all entities on a list of over 250,000 entities, consisting of U.S. banks, savings institutions, credit unions, personal credit institutions, trusts and asset-backed securities entities. A summary notice was also published once in the *IBD Weekly*, *The Wall Street Journal* and *Barron's*, and the summary notice publication program also targeted investment related websites: Yahoo! Finance, Investors.com,

Barrons.com, Marketwatch.com and WSJ.com, as well as placements through the Targeted Digital Audience Network. There was also a press release issued on PR Newswire.

Mailing the individual Notice and Proof of Claim Form once again to the more than 250,000 entities that twice previously received notice of the other settlements would not be reasonable under the circumstances. First, the list is over-inclusive, consisting of all types of financial institutions that may or may not have held loans, which may or may not be tied to LIBOR, and which may or may not have adjusted during the Class Period. Second, the cost of the mailing the Notice and Proof of Claim Form to all these entities would be approximately $200,000, which is 47% of the Settlement Fund of $425,000. Third, mailing another notice to these entities will not reach any new Settlement Class Members and is unlikely to result in any claims (or requests for exclusions or objections) from entities that did not previously submit claims (or requests for exclusion or objections).[3] Any Settlement Class Member that would want to participate in the current Settlement (or object or request exclusion) almost certainly submitted a claim (or objection or request for exclusion) for one of the previous (much larger) settlements. To ensure that individual notice is sent to "all members who can be identified through reasonable effort," the Claims Administrator will send the Notice to each entity that previously submitted a claim or request for exclusion. Moreover, a claim for this Settlement will be generated for all entities that previously submitted valid claims, unless they request exclusion from this Settlement.

In short, sending individual notice to the 250,000 entities would not be reasonable under the circumstance. "Direct notice is inappropriate when it is overly broad or overly inclusive." *Schneider v. Chipotle Mexican Grill, Inc.*, 2020 U.S. Dist. LEXIS 16365, at *29 (N.D. Cal. Jan. 31, 2020). *See Czuchaj v. Conair Corp.*, 2016 U.S. Dist. LEXIS 183669, at *3 (S.D. Cal. May 13, 2016) ("'When the court certifies a nationwide class of persons whose addresses are unknown, notice by publication is reasonable.'") (citation omitted). Individual notice **will be** provided to every Settlement Class Member that can be identified from the prior settlements. In addition, the Summary Notice will be published in two nationally circulated publications, a press release will be issued over PR Newswire, and the Notice and other documents will be available on the Settlement Website. Courts have approved similar notice campaigns when effecting individual notice would require dissemination to an overly broad universe. *See, e.g., Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 787 (7th Cir. 2004) (finding publication in a national newspaper and maintaining a settlement website sufficient notice where individual notice "was impossible here because Fleet has no record of those customers whose financial information it gave the telemarketers but who did not buy anything from the latter. (Those who did buy, the members of the telemarketing class, received individual notice.)"); *Jermyn*, 2010 WL 5187746, at *3 ("If the names and addresses of class members cannot be determined by reasonable efforts, notice by publication is sufficient to satisfy the requirements of the due process clause and Rule 23."); *Schneider*, 2020 U.S. Dist. LEXIS 16365, at *30 (N.D. Cal. Jan. 31, 2020) (finding notice through a digital media campaign and publication in a national paper sufficient where no list of identifiable class members exists and "direct notice to 550,000 online purchasers would be

---

[3] There were no objections to any of the previous settlements.

improper under Rule 23, as those online purchasers are defined by a characteristic that on its face does not establish membership in the certified (or settlement) class").

The proposed Notice, Summary Notice and proof of claim form also comply with Rule 23(c)(2)(B) and comport with due process because they (i) "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings" and (ii) are written so as to "be understood by the average class member." *Wal-Mart Stores, Inc. v. Visa USA., Inc.*, 396 F.3d 96, 114-15 (2d Cir. 2005) (citation omitted). *See* Keough Decl., ¶¶ 10-13.

### **The Plan of Distribution Should Be Approved**

A plan of distribution "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *9 (S.D.N.Y. Apr. 26, 2016) (citation omitted). Here, the issue is not whether the proposed Plan of Distribution should be finally approved. Rather, on this motion for preliminary approval of the Plan of Distribution, the only question is whether the proposed Plan of Distribution is sufficiently reasonable to be *sent* to Lender Class Members, for their review and comment, prior to the final approval hearing. *See, e.g.*, *Sykes v. Mel. S. Harris & Assocs., LLC*, 2016 U.S. Dist. LEXIS 74566 *20 (S.D.N.Y. May 24, 2016).

Plaintiffs have retained experts to develop a model of the "but-for" world, that is an estimate of what LIBOR would have been, in each relevant tenor, and for each day during the Class Period, absent its suppression as alleged in this case. Plaintiffs propose to distribute the Net Settlement Fund to eligible Lender Class Members *pro rata*. *See* Lieberman Decl., ¶ 6. Courts routinely approve *pro-rata* distributions similar to that proposed here. *See*, *e.g.*, *Xuechen Yang v. Focus Media Holding Ltd.,* 2014 U.S. Dist. LEXIS 126738, *28 (S.D.N.Y. Sept. 4, 2014) ("Pro-rata distribution of settlement funds based on investment loss is clearly a reasonable approach." (citation omitted)). Lender Plaintiffs' Counsel recommend the proposed Plan of Distribution as being in the best interests of the Settlement Class. Lieberman Decl., ¶ 6; *see, e.g.*, *In re EVCI Career Colleges Holding Corp. Sec. Litig.,* 2007 U.S. Dist. LEXIS 57918, at *32 (S.D.N.Y. July 27,2007) ("in determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel"). This Court approved this same Plan of Distribution in ruling on the previous settlements. ECF No. 2687, at 3. This proposal has more than a rational basis. If any Lender Class Member disagrees, they will have the opportunity to set forth the basis of their concerns in advance of the final approval hearing, when the fairness and adequacy of the Plan of Distribution will be evaluated.

The motion papers we anticipate filing, should the Court grant permission to do so, are attached hereto.

           Respectfully submitted,

           **POMERANTZ LLP**

           By: *s/ Jeremy A. Lieberman*
             Jeremy A. Lieberman
             Michael J. Wernke

             600 Third Avenue
             New York, NY 10016
             Tel: (212) 661-1100
             Fax: (212) 661-8665
             Email: jalieberman@pmlaw.com
                 mjwernke@pomlaw.com

           *Interim Lead Counsel for the Lender Class*

cc: All Counsel of Record (via ECF)

---

```
Plaintiffs may file their
motion for preliminary
approval without the
necessity of a pre-motion
conference.
```
**SO ORDERED.**

*/s/ Naomi Reice Buchwald*
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

```
Dated:  New York, New York
        October 13, 2020
```